Ruffin, C. J.
 

 It will be at once perceived, that the plaintiffs cannot have a decree, for the want of an allegation or proof of the death of their mothers, Mrs. Lewis, and Mrs. Erwin. The bill states that they were the surviving daughters of James Miller, and were his heirs; and that they were then married, and that the husbands subsequently died, and thereupon that the land descended to the plaintiffs as heirs at law. But it does not state, to whom the plaintiffs are heirs ; and, from the structure of the sentence, the grammatical construction is, that the land descended from the plaintiff’s father. This is the unavoidable construction, when it is perceived that in no part of the bill does it appear, that the. mothers are dead. Consequently the land belongs to Miller’s daughters and not to their husbands’ children. We have no doubt, however, that this was a mere slip of the draftsman, and therefore would allow the cause to stand over for an amendment, if the claim itself had merits, or
 
 it
 
 were at all probable that the plaintiffs could ever entitle themselves to relief. But we are satisfied, they could not get a decree, and consequently that the bill might as well be dismissed at once.
 

 
 *205
 
 The great lapse; of time, and, especially, taken in conjunction with the vagueness of the contract in respect to the particular hand sold, and with the further circumstance, that nothing was ever done under it, furnishes strong grounds for believing that the contract was abandoned, and, at all events, repels all claim to the interference of the Court of Equity. It was forty-one years after the bargain, before the bill was filed, or any distinct claim set up, as far as is seen. There was, indeed, a sort of reputation, that Miller or Miller’s heirs owned land around the Shoal of Stone-cutter’s fork; but it is not pretended, that even the reputation fixed upon any land in particular, except that two witnesses, who ■owned land in one direction, say, they understood that it came up to their lines — though how they came by that understanding, they do not state. It is certain, that the land they reputed to be Miller’s, is altogether different in form from that contracted for; and that Miller never, either in conjunction with Fisher or Coxe, or even by himself, proceeded to survey, or in any way set apart, any particular parcel as his under the contract. And to this day there has been no such appropriation, that can be respected. Indeed, the bill does not and could not claim any land in particular, for none has been identified, at least as at all corresponding to the description in, the contract; and the plaintiffs are unable to describe any land in their bill, for which they are willing to take a deed. Such being the state of the case, the inference seems a fair one, that Miller and Fisher rescinded the contract; for, otherwise, it would be very extraordinary, that Miller did not take a deed from Fisher, who had authority to execute it for five years after the contract, nor -claim one from either of the Coxe’s, nor even take any step to identify the land he was to have.
 

 The probability is, therefore, that Fisher paid for the horse in some other way, and that in fact the sale was expressly rescinded — especially, as Fisher, though he rc
 
 *206
 
 ported other sales to bis principals, never reported this. But if it was not expressly rescinded, the Court must treat it as abandoned. Not one act has been done under it, as a subsisting contract for about forty years. The bill, indeed, endeavors to excuse this
 
 laches
 
 by a statement of Miller’s age and infirmities. But there is no evidence on those points, and the persons, from whom he conld get the title, were resident in the same village with him. The bill also states acts of ownership, such as paying taxes and cutting timber ; but'even those equivocal acts are not proved, nor any thing approaching towards a preparation to get a title, until Miller’s son-in-law, Lewis, in 1835, employed F. Alexander to see if he could not lay •oil’ 600 acres of land around the Shoal in some form. It is very clear, that not one of the Coxe family ever acknowledged the contract as obligatory or subsistent, and that Francis S. Coxe did not mean to do so. or in the least to confirm it by his instructions to his surveyors, and any thing done under them — for they were acts
 
 diverso intuitu.
 
 There is, - then, nothing whatever to account for the want of diligence on the part of the alleged vendee, or to shed that light upon the transactions between Miller and Fisher, which will enable the Court to see them clearly, so as to be reasonably sure .that we see the whole of them, through the dim obscurity of so long an interval as forty years. The case is not more favorable to the plaintiffs than that of
 
 Tate
 
 v.
 
 Conner,
 
 2 Dev. Eq. 224, in which relief was refused after thirty-four years.
 

 For these reasons, the bill must be dismissed with ■ costs.
 

 Per Curiam.
 

 Decree accordingly.